UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALEB E. BELCHER; and CLB, by and through his guardian ad litem CALEB E. BELCHER,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 2:13-cv-01699-GEB-KJN<br><br><br><br>**ORDER ON MOTIONS IN LIMINE**[*] |

Plaintiffs move in limine for a pretrial order precluding the admission of certain evidence at trial. Each motion is addressed below.

**Motion in Limine No. 1**

Plaintiffs move to exclude Defendant's accident reconstruction expert Dr. Rajeev Kelkar's "[Expert] Report with appendices (totaling over 200 pages of unauthenticated evidence)," arguing it is "inadmissible hearsay," and "there has been insufficient foundation laid for [its] introduction." (Pls.' Mot. in Limine ("MIL") No. 1 1:23-27, 2:7-8, 2:16-26, ECF

---

[*] These motions are suitable for decision without oral argument.

1

No. 33.) Plaintiffs also request "that the testimony of Dr. Kelkar be limited, and specifically that he not be allowed to comment upon or interpret the facts as contained within the subject surveillance video." (Id. at 4:7-9.) Plaintiffs argue:

> [I]n his prior declaration[,] Dr. Kelkar purports to offer "opinions" as to what the surveillance video (an overhead view of the accident location at the time of the subject incident) shows. . . . [T]o the extent his "opinions" are a description of what is occurring in the video, the matter is improper for expert comment, and further lacks sufficient foundation for his conclusions and opinions as it forces his reliance on a distant bird's eye view of the subject incident, without other personal knowledge. . . .
>
> The matter should further be precluded as that of improper opinion evidence. . . . Here, Dr. Kelkar's anticipated testimony stands to serve as a narrative of his perception of the . . . surveillance video, and what is occurring therein. Any "opinion" or "conclusion" derived theref[rom] is simply inappropriate for expert comment as the trier of fact is certainly capable . . . of interpreting such evidence as it is not beyond the common experience or ordinary skill of the trier of fact. Furthermore, . . . Dr. Kelkar . . . has no personal knowledge on the subject . . . , and simply seeks to interpret "facts" veiled as an expert opinion.

(Id. at 3:3-4:6.)

Defendant counters: "Plaintiffs' request to exclude Dr. Kelkar's expert report and appendices is baseless. Dr. Kelkar is entitled to offer the opinions in his report and to testify . . . as to the bases for those opinions." (Def.'s Opp'n MIL No. 2 5:21-23, ECF No. 40.) Defendant argues:

> Dr. Kelkar [is] entitled to rely on all the data referenced and attached to his report. . . .

2

>. . . [A]nalysis of video footage is a routine part of accident reconstruction analysis when available. Dr. Kelkar is also entitled to talk about the other bases for his opinions, including the vehicle specifications, Anthropometric Reference Data, and camera information. . . . This is the type of data that an expert routinely relies upon and is thus admissible under Rule 703 to show the bases for the expert's opinions.

(Id. at 6:17-7:3.)

Defendant also rejoins that "[t]here is no basis to limit or exclude the testimony of . . . Dr. Kelkar." (Id. at 1:18-19.) Defendant argues:

>Plaintiff[] . . . [contends] that Dr. Kelkar offers improper opinions by doing nothing more than reciting what the video shows. This is false. To the contrary, Dr. Kelkar uses the information in the video as one data point for his expert assessment and opinions regarding the speed Officer Linn was driving, the amount of time between when minor CLB was standing still until the time he unexpectedly darted into the street and collided with Officer Linn's vehicle, the distance that minor CLB traveled, and whether Officer Linn could have stopped in time to avoid the accident. As noted in the report, Dr. Kelkar used measurements at the scene, analyzed the geometry of the accident location, and compared them with the video, which included a clock showing what occurred to the thousandth of a second. Dr. Kelkar thus takes the qualitative video footage and converts it to quantitative information that is used as a basis for his accident reconstruction conclusions. Accordingly, when Dr. Kelkar discusses the video at trial, he will not merely recite what is shown, he will describe how he used what is shown to conduct his expert assessment and form his ultimate expert opinions. Dr. Kelkar's analysis and opinions go well beyond merely narrating what the video shows.
>
>. . . .

3

> . . . Dr. Kelkar's opinions require specialized skill and provide the trier of fact significantly more information than is otherwise available.

(Id. at 8:1-14, 9:25-27 (citations omitted).)

Plaintiffs state in their reply that they "seek to clarify the intent of their motion." (Pls.' Reply MIL No. 1 1:22, ECF No. 44.) Plaintiffs state:

> Specifically, the motion seeks to preclude the admission of Dr. Kelkar's written report / analysis . . . and to limit his testimony to the extent it purports to *narrate* the subject surveillance video. Plaintiffs have no objection to the [expert report's] appendices, at this time, assuming an appropriate foundation will be laid at trial.

(Id. at 1:22-27.) These statements will not be considered in ruling on this motion since they were made for the first time in reply and change the scope of the original motion. Cf. Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

This motion lacks the preciseness and sufficient factual context required for a pretrial in limine ruling.

**Motion in Limine No. 2**

Plaintiffs "move to preclude any testimony of" a trial witness Defendant identified in the Joint Pretrial Statement as "an agency witness," under Federal Rule of Civil Procedure 37(c). (Pls.' MIL No. 2 1:22-24, 2:6, ECF No. 34.) Plaintiffs argue: "Defendants have identified a 'witness' without providing the actual identity or contact information in either its initial, supplemental or pre-trial disclosures. Plaintiffs have had no

4

opportunity to discover, depose or otherwise obtain any understanding as to who this witness is or what the substance of his/her testimony may be." (Id. at 2:2-6.)

Defendant states "it is true that Capt. Aguilar was not named in the United States' Rule 26(a) disclosures, and that the United States listed an 'agency representative' in the Joint Pretrial Statement." (Def.'s Opp'n Pls.' MIL No. 2 1:28-2:2, ECF No. 41.) However, Defendant rejoins that it "should be permitted to have its agency representative . . . offer brief background testimony regarding agency operations, the unique or unusual duties of Forest Service law enforcement officers, and other related matters." (Id. at 1:16-18.) Defendant argues:

> Capt. Aguilar is not offered for his knowledge of the accident involved in this case; instead, he is offered . . . to explain how the agency operates. In other words, he will not be offering percipient testimony about the accident. . . .
>
> . . . .
>
> Moreover, Rule 37(c)(1) rule does not permit exclusion of testimony if the alleged non-disclosure is "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, it is both. First, it is harmless in that there is no prejudice to Plaintiffs. Capt. Aguilar will merely testify regarding Officer Linn's patrol duties on the day of the accident, including why she needed to patrol the area in question and why she could not simply avoid an area with people recreating in it. As the chief law enforcement officer on this portion of the National Forest, Capt. Aguilar will further provide the Court a broader picture and an understanding of how the Forest functions and the important role law enforcement officers play in the Forest. His testimony is expected to be very brief, and Plaintiffs also have the opportunity to depose him before trial if they wish.

5

> In addition, any failure to disclose Capt. Aguilar in discovery is justified because . . . he is not offered as a percipient witness and was not chosen as a trial representative until after discovery closed. Shortly after the United States chose him as its trial representative, he unexpectedly was away from work for an open-ended period of time for personal reasons and could not confirm that he could testify until early-May 2015. Plaintiffs were immediately notified of his identity once he confirmed that he would be back to work in time for trial, and he was made available for deposition at Plaintiffs' convenience. There is simply no harm or prejudice to Plaintiffs in permitting this witness to testify briefly.

(Id. at 2:2-5, 3:24-4:12.)

Plaintiffs reply:

> Despite the late information provided in [Defendant's] Opposition, prior to the filing of motions in limine, Defendant never identified the subject "witness" in any of its pre-trial disclosures. Plaintiffs have had no opportunity to discover, depose or otherwise obtain any understanding as to who this witness is or what the substance of his/her testimony may be. Thus, the element of surprise is clearly established herein. Defendant seeks to counter this argument by providing a late opportunity for deposition. Even if a deposition could reasonably be set before trial, as trial is just weeks away and discovery has been closed for some time, this does little to cure the element of surprise, or allow Plaintiffs a reasonable opportunity to respond to or address anything that might be learned from this deposition. Defendant's accusation that Plaintiffs have known of this since the pre-trial statement and therefore shows no surprise again fails, as Plaintiffs stated their objection at that time and made an inquiry as to the [agency witness's] identity. At that time, [Defendant's] counsel still could not identify the witness, and agreed to consider withdrawal or otherwise allow the issue to be raised by way of a motion in limine. No offer of deposition or production of evidence[] . . . was made at

1  that time.
2  (Pls.' Reply MIL No. 2 2:7-21, ECF No. 45.)
3    "Parties are required to [disclose] the name and
4  contact information of any individual likely to have discoverable
5  information 'that the disclosing party may use to support its
6  claims or defenses, unless the use would be solely for
7  impeachment.'" Matson v. UPS, Inc., No. C10-1528 RAJ, 2013 WL
8  5966131, at *1 (W.D. Wash. Nov. 8, 2013) (quoting Fed. R. Civ.
9  Proc. 26(a)(1)(A)(i)). "Parties are also required to
10 [disclose] . . . the name and contact information of any
11 witnesses, . . . 'the party expects to present [at trial] and
12 those it may call if the need arises.'" Id. (quoting Fed. R. Civ.
13 Proc. 26(a)(3)(A)(i)). Further, "[a] party . . . who has made a
14 disclosure . . . must supplement or correct its . . .
15 response . . . if the party learns that in some material respect
16 the disclosure or response is incomplete." Fed. R. Civ. P.
17 26(e)(1).
18   "If a party fails to . . . identify a witness as
19 required by Rule 26(a) or (e), the party is not allowed to use
20 that . . . witness to supply evidence . . . at trial, unless the
21 failure was substantially justified or is harmless." Fed. R. Civ.
22 P. 37(c)(1). "The burden is on the party facing sanctions to
23 prove harmlessness [or substantial justification]." Yeti by
24 Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1107 (9th
25 Cir. 2001).
26   Defendant has not shown that its failure to identify
27 Captain Aguilar as a witness was "substantially justified
28 or . . . harmless." Fed. R. Civ. P. 37(c)(1). Therefore, this

motion is granted.

Dated: May 27, 2015

GARLAND E. BURRELL, JR.
Senior United States District Judge