UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALEB E. BELCHER; and CLB, by and through his guardian ad litem CALEB E. BELCHER,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | No.  2:13-cv-01699-GEB-KJN<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

       This case concerns an unfortunate accident in which Plaintiff CLB ("CLB"), a young boy who was four years old at the time of the accident, caused himself to come into contact with a patrol vehicle driven by Jennifer Linn, a law enforcement patrol officer for the United States Department of Agriculture Forest Service ("Officer Linn"). CLB sues for the injuries he sustained as a result of the collision, and CLB's father, Plaintiff Caleb E. Belcher ("Caleb Belcher"), sues based on his claim that he witnessed CLB's accident and thereby also sustained injuries.

       The accident occurred on a road within the El Dorado National Forest in an area known as the Big Hill Lookout, which is located inside the State of California. The United States is the defendant in this action under the Federal Tort Claims Act and is liable to the same extent as a private party would be liable "in accordance with the law of the place where the act or

1

omission occurred." 28 U.S.C. § 1346(b)(1). Therefore, California law governs the claims.

Each Plaintiff alleges a negligence claim against the United States, premised on the assertion that Officer Linn breached the duty of care she owed CLB. Specifically, Plaintiffs contend Officer Linn failed to exercise the degree of care she should have used to prevent CLB from receiving the injuries he received when he collided with the patrol vehicle Officer Linn drove. Plaintiffs argue under California law "[a] greater degree of care is generally owed to children because of their lack of capacity to appreciate risks and avoid danger." McDaniel v. Sunset Manor Co., 220 Cal. App. 3d 1, 7 (1990); see also Judicial Council of California Civil Jury Instructions (2015 ed.) No. 412 ("An adult must anticipate the ordinary behavior of children. An adult must be more careful when dealing with children than with other adults."). The California Supreme Court discussed negligence in Flowers v. Torrance Mem'l Hosp. Med. Ctr., 8 Cal. 4th 992, 997-98 (1994) (internal quotation marks, citations, footnote, and alteration in original omitted), as follows:

> Negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm. Thus, as a general proposition one is required to exercise the care that a person of ordinary prudence would exercise under the circumstances. Because application of this principle is inherently situational, the amount of care deemed reasonable in any particular case will vary, while at the same time the standard of conduct itself remains constant, i.e., due care commensurate with the risk posed by the conduct taking into consideration all relevant circumstances. There are no degrees of care, as a matter of law; there are only different amounts of care, as a matter of fact. . . .

> With respect to professionals, their specialized education and training do not serve to impose an increased duty of care but rather are considered additional "circumstances" relevant to an overall assessment of what constitutes "ordinary prudence" in a particular situation. Thus, the standard for professionals is articulated in terms of exercising "the knowledge, skill and care ordinarily possessed and employed by members of the profession in good standing . . . .

The following findings of fact and conclusions of law are made under Federal Rule of Civil Procedure 52, in light of the testimony and documentary evidence presented at trial.

## **FINDINGS OF FACT**

1. On January 15, 2011, Caleb Belcher, accompanied by his then four year old son CLB, and others, visited the Big Hill Lookout area to play in the snow.

2. The Lomba family accompanied Caleb Belcher and CLB in a Recreational Vehicle ("RV") to the area where the Big Hill Lookout is located at the top of Ice House Road. Two members of the group followed in a Jeep.

3. Big Hill Lookout Tower is surrounded by a one-way asphalt, round-a-bout roadway, with an open area in the middle that was covered with snow on January 15, 2011.

4. At the time Plaintiffs arrived, the weather was clear and sunny, and visibility was good.

5. Upon arriving, the group parked the RV off of the right side of the road, and the Jeep followed behind.

6. A video camera on Big Hill Lookout Tower was positioned in a manner that looked down onto the accident scene towards Ice House Road from above, and recorded the accident.

3

1          7.   Following arrival at the destination, Emily Lomba
2    (a then nineteen-year-old woman) took a then five-year-old girl
3    and CLB out of the RV to play in the snow.
4          8.   Emily Lomba and the two children crossed the
5    round-a-bout road and began playing in the snow covered open
6    area.
7          9.   Caleb Belcher remained in the RV, putting on his
8    snow boots.
9          10.  Emily Lomba and the children threw snowballs
10   across the road, back towards the RV at Craig DeHerrera, a family
11   friend.
12         11.  On the subject date, Officer Linn was on patrol in
13   a Forest Service white Ford Expedition, and approached the area
14   of Big Hill Lookout.
15         12.  Officer Linn was patrolling the area in accordance
16   with her patrol functions, testifying that the Big Hill Lookout
17   Tower had frequently been broken into.
18         13.  As Officer Linn drove up Ice House Road towards
19   the Big Hill Lookout Tower round-a-bout, someone was parking a
20   Jeep near the RV.
21         14.  As the Jeep was being parked, it blocked the entry
22   point of the round-a-bout, and Officer Linn's vehicle came to a
23   virtual stop before entering the round-a-bout.
24         15.  The entry from Ice House Road to the round-a-bout
25   is up a relatively steep incline.
26         16.  As the Jeep moved out of the roadway, Officer Linn
27   drove into the round-a-bout.
28         17.  As Officer Linn entered the area, she observed a

group of people on her left, and a gentleman (later determined to be named Craig DeHerrera) on her right. The group on the left consisted of Emily Lomba, CLB, and another child, all of whom she observed playing in the snow and throwing snowballs. Craig DeHerrera was on her right.

18. During Officer Linn's approach, Emily Lomba, CLB, and the other minor child were out of the vehicle travel portion of the road, and were positioned on the left hand side of the direction she traveled, either out of the roadway entirely or on the outer edge of the asphalt roadway where it abutted the beginning of the snow berm.

19. During Officer Linn's approach, Emily Lomba, CLB, and the other minor child were within arm's-length of each other, playing in the snow, and Officer Linn had no reason to suspect that Emily Lomba would not keep the children a safe distance from the portion of the road used for vehicle travel or that CLB would suddenly move into the road and collide with the left front portion of the white Ford Expedition Officer Linn drove.

20. During Officer Linn's approach, the parties did not throw snowballs across the road, and Officer Linn did not observe them throwing snowballs across the road before she approached.

21. Officer Linn drove slowly through the area at approximately 6.5 miles per hour, passing between Craig DeHerrera on the right side of the vehicle she drove, and Emily Lomba and the two minor children on the left side of that vehicle.

22. During Officer Linn's approach, she had no reason to suspect that CLB or any other person was about to move quickly

into the roadway.

23. As Officer Linn proceeded to pass when CLB had his back to her vehicle and was within arms-reach of Emily Lomba.

24. Officer Linn then noticed Craig DeHerrera (on the right side of the road) engage his right arm in a downward motion. She saw something in his right hand. She made these observations before the impact with CLB. Officer Linn explained that it is within the scope of her patrol law enforcement duties to be attentive to people in the forest that get rid of contraband when they see law enforcement officers, and that arm movements toward the ground could pose a safety concern.

25. Officer Linn looked toward Craig DeHerrera for approximately one second to determine why he was moving his arm toward the ground. After looking towards Craig DeHerrera, Officer Linn determined that he was placing a container of Rockstar beverage on the ground. Officer Linn was then driving on the right side of the road, away from where the children and Emily Lomba were located on the left side of the road.

26. At the same approximate time that Officer Linn looked away from Craig DeHerrera, CLB quickly, and without warning, darted into the roadway.

27. CLB ran into the driver's side of Officer Linn's patrol vehicle, contacting it near the front quarter panel. Officer Linn did not see CLB before he contacted her vehicle. CLB moved quickly into the vehicle's left front, where he collided with it, following which he fell to the ground, and the vehicle rolled over one of his legs.

28. Defendant's accident reconstruction expert, Rajeev

6

1  Kelkar, Ph.D. explained that it took CLB only 1.0-1.2 seconds to
2  strike Officer Linn's vehicle from the time he began unexpectedly
3  moving quickly into the roadway.
4        29.  CLB was slightly taller than the tire on Officer
5  Linn's vehicle and shorter than its hood.
6        30.  Officer Linn never saw CLB move towards her
7  vehicle.
8        31.  Officer Linn's first awareness of a problem was
9  when she heard a woman scream, "Oh my God, [CLB]."
10       32.  After Officer Linn heard this shout, she pressed
11  her brakes, and stopped her vehicle.  When she came to a stop,
12  part of her right front tire was slightly off the right side of
13  the road.
14       33.  CLB was in the roadway at the time of the initial
15  contact between him and Officer Linn's vehicle.
16       34.  Officer Linn's vehicle remained in the roadway at
17  all times before, during, and after CLB made contact with the
18  vehicle.
19       35.  Under the circumstances, Officer Linn could not
20  reasonably have stopped her vehicle before CLB collided with it.
21       36.  Dr. Kelkar opined that since Officer Linn could
22  not be expected to have reasonably anticipated CLB's sudden
23  movement into the vehicle travel portion of the road, this was a
24  virtually unavoidable accident for Officer Linn.
25       37.  Dr. Kelkar testified:
26
> Officer Linn was traveling at speeds of
> approximately six and a half miles per hour
27
> or less in the four seconds leading up to
> initial contact between CLB and [Officer
28
> Linn's vehicle] . . . . CLB was on the east

7

        side of the roadway [the driver's side of Officer Linn's vehicle] for several seconds as Ms. Linn approached the entrance to the Lookout Tower loop. CLB was moving across Big Hill Road for approximately 1.1 seconds before initial contact was made. Look away time, perception reaction time and the break to stop times are in excess of the time that CLB was moving across the roadway, making this a virtually unavoidable accident for Ms. Linn.

38. Dr. Kelkar explained he engaged in "what we call the time speed and distance analysis" to determine travel time, as follows:

        We take the video footage and we reconstruct using photogrammetry the location of the vehicle at various points in time. The video footage has a time clock on the upper left corner and that allows us to tell us at this particular point in time without reconstruction of the photogrammetry where is the vehicle, and so once you place the vehicle on the scale scene diagram, we can then measure off distances and we know the distance covered in a certain amount of time, and we can calculate the average speed across that timing tool.

39. Dr. Kelkar also testified that the tire tracks of Officer Linn's vehicle "indicat[e] that . . . [she] [wa]s moving towards the right side or the west side of the roadway [(passenger side)] as she[] [was] approaching the loop."

40. In addition, down the road from where the accident occurred, but in view of the RV and the playing children, Cammie Hewitt and her family were parked and observing the RV, the children, and the activity in the round-a-bout. Cammie Hewitt testified during the trial that her family was about half a block from where the RV was parked, and she saw adults cross the street with a child. She also testified that "we had made a comment about how the child wasn't being watched," "and then before we

knew it [the child] was in the corner of the vehicle" that Officer Linn drove. Cammie Hewitt also told California Highway Patrol Sergeant Christopher Davis "it wasn't the ranger's fault," "something outside the driver's control caused the accident."

41. The California Highway Patrol also investigated CLB's accident and its conclusions indicate that it was reasonable for Officer Linn's attention to be drawn to Craig DeHerrera in light of his downward arm movement, and that Officer Linn did not see CLB when he moved further into the roadway and collided with the vehicle Officer Linn drove.

## CONCLUSIONS OF LAW

Officer Linn exercised reasonable care in driving through the area where CLB was injured. Specifically, she reasonably assumed that Emily Lomba would ensure that CLB would not place himself in danger by entering the portion of the roadway used by a traveling motorist, and there was no indication that Officer Linn should have realized that CLB would place himself in danger by swiftly moving into that roadway at the approximate time when Officer Linn reasonably discharged a law enforcement patrol observation function for the reasonable period of time she was visibly investigating why Craig DeHerrera was moving his right arm towards the ground.

## JUDGMENT

For the stated reasons, Judgment shall be entered in favor of the United States.

Dated:  June 11, 2015

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge